■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD J. FERRARA, Appellant.—Levine, J. Appeal from a judgment of the County Court of Schenectady County (Harrigan, J.), rendered July 18, 1986, upon a verdict convicting defendant of the crimes of burglary in the second degree and conspiracy in the fourth degree.

Defendant's convictions for burglary in the second degree and conspiracy in the fourth degree were based on the testimony of (1) Robert Farrell, a State Police informant who ostensibly was a willing participant in the crimes, but in fact had warned the police in advance of the plan to enter the home of defendant's employer, Stefano Parente, at 1900 Union

Street in the Town of Niskayuna, Schenectady County, and steal property therefrom, and (2) the State Troopers who conducted a surveillance from inside and outside the Parente home and arrested defendant after the break-in. Farrell testified that in June 1985, following his arrest for an unrelated crime, he agreed to work with the State Police as a drug informant and to pass on information concerning any other illegal activities that came to his knowledge. On about August 17, 1985, Farrell was told by Joseph Mariani, his housemate on McClellan Street in the City of Schenectady, that defendant and Anthony Tessitore wanted them to participate in a burglary. Farrell informed Trooper Matthew Probst, his State Police liaison, of this and was instructed to go along with the proposal. During the evening of August 20, 1985, defendant and Tessitore stopped at Farrell's and Mariani's residence, and the four men took a ride in Tessitore's orange Chevrolet Monte Carlo automobile. They drove up Union Street into Niskayuna and defendant pointed out the Parente home, relating that Parente was his boss and that he had visited there before and knew it contained a safe. No action was taken because the house appeared to be occupied. Someone also appeared to be at home in a second house in the area that defendant directed them to, after which the four men decided to terminate their efforts for the night.

The next day Farrell met with Probst and told him what had transpired and the likelihood that there would be another attempt at burglarizing the Parente residence. The police fitted Farrell with a concealed recording device, the tapes from which ultimately proved inaudible. The police then made arrangements for a surveillance that evening, with officers stationed both inside the house and in vehicles nearby. Farrell further testified that during the evening defendant and Tessitore stopped at his and Mariani's residence, and discussed whether to make a second attempt at breaking into the Parente dwelling. They decided to do so after defendant said, "Let's go and get it over with, I don't want to waste my whole night again." After defendant and Tessitore dropped off a girl who was with them in the orange Chevrolet Monte Carlo, the four men rendezvoused and drove in that vehicle in the vicinity of the Parente home. A discussion ensued as to which of the four would actually break in; it was agreed that Farrell and Tessitore would enter the house. According to Farrell, defendant assumed the responsibility for driving the vehicle and told them to "make it quick, he'd be riding up in front of the house up and down and just to make it quick, you know,

in and out". Tessitore and Farrell entered the home after Tessitore kicked in a door. Tessitore directed Farrell to go upstairs to get pillowcases, after which the police inside arrested Tessitore.

Following Tessitore's arrest, the officers radioed for the arrest of defendant and Mariani in the vehicle. State Troopers testified to observing the orange Chevrolet Monte Carlo being driven back and forth in the vicinity of the Parente home while the burglary was taking place. According to the Troopers, when defendant was placed under arrest, he was read the *Miranda* warnings and asked whether he wished to speak to them, to which he replied, "You got me cold for a burg deuce. There's nothing you can do for me, so there's no reason for me to cooperate."

Defendant's main points on appeal attack the sufficiency of the evidence to support the convictions of conspiracy and burglary, County Court's denial of his motion to suppress his postarrest statement and the effectiveness of his trial counsel's representation. We find no basis for disturbing the ruling that defendant's statement was admissible. At the time defendant was arrested, the police were aware that the burglary had been committed. The information by Farrell and observations of defendant driving to the scene and back and forth past the Parente home while the burglary was in progress supported a reasonable belief on the part of the police that defendant was acting in concert with the actual perpetrators. There was thus sufficient evidence to establish probable cause for defendant's warrantless arrest *(see, People v Bigelow,* 66 NY2d 417, 423). The statement thus was not suppressible as the fruit of an illegal arrest *(cf., People v Tirado,* 69 NY2d 863). County Court could also credit the testimony of the arresting officers that defendant had been advised of his rights and that no coercion was used to obtain his statement *(see, People v Delgado,* 118 AD2d 580, *lv denied* 67 NY2d 1052).

As to the sufficiency of the evidence, Farrell's testimony, if believed, certainly constituted proof that defendant in fact instigated and targeted the burglary of his employer's home, that he and the other participants had reached a prior understanding to commit the crime and, that at the time of actual commission, defendant was aiding the perpetrators by driving the vehicle to be used as the means for leaving the scene with the fruits of the burglary. Farrell's version was corroborated by defendant's incriminating statement and the observations of the police officers during their surveillance. The foregoing evidence established each element of the crimes of conspiracy

in the fourth degree and burglary in the second degree and of defendant's criminal liability therefor *(see,* Penal Law §§ 20.00, 105.10, 140.25). Giving appropriate deference to the jury's opportunity to judge the credibility of witnesses, we also conclude that the verdict is consistent with the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490, 495).

We likewise reject defendant's claim that he was denied the effective assistance of counsel. The record reveals that defendant's attorney actively participated in the trial, vigorously cross-examined Farrell, the prosecution's principal lay witness, and competently educed the proof comprising defendant's defense. Defendant points only to 3 claimed omissions of defense counsel to sustain his argument: (1) the failure to object to the admission of hearsay statements of other participants implicating defendant, (2) the neglect to request a missing witness charge based on the failure of the prosecution to call the officer who radioed instructions from the Parente home for the arrest of defendant and Mariani in the vehicle, and (3) the failure to challenge the validity of a prior felony conviction which was the basis of his sentence as a predicate felon. The incriminating hearsay statements referred to by defendant were made by coconspirators in the course of and in furtherance of the conspiracy *(see, People v Bilello,* 124 AD2d 665). Except in one instance which could not have significantly affected the result, the statements were introduced after the conspiracy had already been established by other competent evidence *(see, People v Sanders,* 56 NY2d 51, 62). The testimony of the officer who passed down instructions for defendant's arrest was of scant materiality on the contested issues at the trial and was at best cumulative. Therefore, the failure to have him testify did not require a missing witness charge *(see, People v Clark,* 128 AD2d 270, 272-273). Nor has defendant demonstrated that he had any ground to contest his prior felony conviction which could have been effective had counsel raised the issue. Thus, it is highly doubtful that any of the measures defendant now claims counsel should have taken would have been effective, and the omissions in no way derogate from the generally meaningful representation defendant received *(see, People v Smith,* 59 NY2d 156).

Defendant's remaining points raise issues as to the conduct of the trial and the excessiveness of the sentence he received. From our review of the record, the errors, if any, were harmless and could not have affected the outcome. The sentence was fully appropriate in view of defendant's prior record and the fact that the instant crimes were committed shortly

after defendant was released on parole from incarceration on his previous felony conviction. We have also considered the arguments set forth in defendant's *pro se* brief and find them equally without merit.

Judgment affirmed. Casey, J. P., Yesawich, Jr., Levine, Harvey and Mercure, JJ., concur.