■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CURTIS M. BRISSON, Appellant. [892 NYS2d 618]—

McCarthy, J.

Defendant, a suspect in several burglaries, was the subject of surveillance by investigators from the State Police involving a global positioning system (hereinafter GPS) tracking device attached to defendant's car and two unmarked patrol cars assigned to follow defendant. Investigators in one car tracked defendant's movements on a laptop computer and relayed information to the other car so it could follow defendant's car without being observed by defendant.

In this manner, investigators tracked defendant to Kohl's Plaza in the Town of Colonie, Albany County at 12:38 A.M. on March 15, 2008. Investigators visually observed defendant in front of the building housing several businesses in the plaza and his car was monitored on the GPS laptop when he drove behind the building. He circled the building once, paused briefly in front of it, then drove behind the building again, where his car remained for approximately eight minutes. When defendant left the plaza, Investigator Matthew Britten and a senior investigator checked the rear doors to the building while Investigators Michael Student and Henry Abeel followed defendant. The rear door to Ming's Wok Restaurant had been forced open and the cash register and cabinets inside were in disarray with coins scattered on the floor.

Britten notified the other investigators that the restaurant had been broken into, and a traffic stop of defendant was effected, during which the investigators observed two cartons of cigarettes and a cookie tin, all with Chinese language written characters on them, in plain view in defendant's car. A search revealed bundles of cash in the pockets of defendant's coat and pants, as well as a crowbar under some clothing in the car, and defendant was arrested. The restaurant owner verified that the cigarettes and the cookie tin holding petty cash, as well as money from the register drawer and a black purse, were stolen

from his restaurant sometime after he locked up at 10:30 or 11:00 P.M.

Defendant first challenges the weight and legal sufficiency of the evidence supporting his convictions, after a jury trial, for burglary in the third degree and petit larceny. To the extent that defendant's general trial and posttrial motions claim that the People failed to adduce legally sufficient evidence on both counts of the indictment, such claim was not preserved for appellate review by appropriate motion (*see People v Finger*, 95 NY2d 894, 895 [2000]; *People v Bynum*, 70 NY2d 858, 859 [1987]; *see generally People v Gray*, 86 NY2d 10, 19 [1995]). However, we will necessarily evaluate the sufficiency of the proof regarding each element of the charges as part of our weight of the evidence review (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Caston*, 60 AD3d 1147, 1148-1149 [2009]; *People v Loomis*, 56 AD3d 1046, 1046-1047 [2008]). Such an analysis must be "based on all the credible evidence" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), including evidence submitted by the defense (*see generally People v Hines*, 97 NY2d 56, 61 [2001]). A conviction for burglary in the third degree requires proof that defendant knowingly entered or remained in a building with the intent to commit a crime therein (*see* Penal Law § 140.20; *People v Gaines*, 74 NY2d 358, 359 [1989]) and a conviction for petit larceny requires proof that defendant stole property (*see* Penal Law § 155.25; *Matter of Jesse L.*, 37 AD3d 998, 999 [2007]). In our view, although acquittal on all charges would not have been unreasonable (*see People v Danielson*, 9 NY3d at 348), review of conflicting testimony and rational inferences to be drawn from the evidence, giving proper deference to the jury's assessment of witness credibility (*see People v Bleakley*, 69 NY2d at 495), reveals that the convictions were not against the weight of the evidence.

Although the jury was not told that defendant was a suspect in prior burglaries and was instructed not to speculate as to why he was under police surveillance, the evidence showed that defendant, under electronic and visual surveillance by police, was in the immediate vicinity of the restaurant during the time period in which it was burglarized for a sufficient period of time to commit the crime, and he was apprehended with proceeds from the theft immediately after leaving that location. Defendant was alone in his car at all times that investigators were able to visually observe him. Britten observed no other people or vehicles in the area behind the building housing the restaurant. A certified evidence technician testified that the crowbar found in defendant's car could have been used to force

open the restaurant's back door. Although no fingerprints were recovered from the crime scene, gloves were found in the center console of defendant's car. Accordingly, we find that a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt (*see People v Marmulstein*, 6 AD3d 879, 880 [2004], *lv denied* 3 NY3d 660 [2004]).

Next, defendant contends that counsel was ineffective because, among other things, he did not seek to exclude evidence on the basis that it was obtained by an illegal search, i.e., as a result of attaching a GPS tracking device to his car without a warrant. We disagree. A defendant's right to counsel requires "meaningful representation" in view of the totality of the evidence, the law and the circumstances of the particular case as of the time of the representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Lane* 93 AD2d 92, 97-99 [1983], *lv denied* 59 NY2d 974 [1983]). Here, defense counsel successfully precluded evidence as to when and why the GPS device was installed on defendant's car to prevent the jury from learning that defendant was a suspect in several burglaries. At the time of defendant's suppression motion and trial, applicable case law held that constitutional protections did not require a warrant in order to place a GPS tracking device on a vehicle (*see United States v Knotts*, 460 US 276, 281-282 [1983]; *People v Weaver*, 52 AD3d 138, 141-143 [2008], *revd* 12 NY3d 433 [2009]). That authority was controlling until May 2009, more than six months after defendant was convicted, when the Court of Appeals reversed our holding in *Weaver* and held, on state constitutional grounds, that "in the absence of exigent circumstances, the installation and use of a GPS device to monitor an individual's whereabouts requires a warrant supported by probable cause" (*People v Weaver*, 12 NY3d 433, 447 [2009]). Counsel was not required to anticipate a change in the applicable law. Accordingly, at the time of the representation and "consistent with published decisions on the subject," counsel's strategy of focusing on the legality of the stop rather than the warrantless attachment of the GPS device "might well have been pursued by a reasonably competent attorney" (*People v Angelakos*, 70 NY2d 670, 673-674 [1987] [internal quotation marks omitted]; *see People v Orcutt*, 49 AD3d 1082, 1086-1087 [2008], *lv denied* 10 NY3d 938 [2008]).*

Next, we find that County Court properly denied defendant's

---

* We need not reach the issue of whether the Court of Appeals' holding in *Weaver* would apply retroactively to invalidate convictions obtained prior to the date of that ruling (*see People v Martin*, 50 NY2d 1029, 1031-1032 [1980]). We note that the general rule in cases on direct appeal applying the law as it

motion to suppress evidence obtained as a result of defendant's warrantless stop. In our view, reasonable suspicion to stop defendant existed based upon information that defendant was a suspect in prior burglaries and under active police surveillance when police discovered that a Chinese restaurant had been broken into in the middle of the night, immediately after defendant spent eight minutes behind the building in which the restaurant was located (*see generally People v Booker*, 64 AD3d 899, 900 [2009]; *People v Tillie*, 239 AD2d 670, 671-672 [1997], *lv denied* 91 NY2d 881 [1997]). Probable cause to arrest defendant existed, at the very latest, when police observed cigarette cartons and a box covered with Chinese language written characters in defendant's car (*see generally People v Cunningham*, 229 AD2d 669, 670 [1996]; *People v Ferrara*, 139 AD2d 842, 844 [1988], *lv denied* 72 NY2d 918 [1988]; *People v John BB.*, 81 AD2d 188, 189-190 [1981], *affd* 56 NY2d 482 [1982], *cert denied* 459 US 1010 [1982]).

Finally, defendant's sentence was not harsh and excessive. Defendant was sentenced as a second felony offender to a prison term of 3½ to 7 years for burglary in the third degree and one year for petit larceny, which merged with the indeterminate term. As we perceive no abuse of discretion by County Court or extraordinary circumstances warranting modification, it will not be disturbed (*see People v Carter*, 40 AD3d 1211, 1213 [2007], *lv denied* 9 NY3d 864 [2007]; *People v Spencer*, 272 AD2d 682, 685 [2000], *lv denied* 95 NY2d 858 [2000]).

We have examined defendant's remaining contentions and find them to be without merit.

Cardona, P.J., Spain, Lahtinen and Stein, JJ., concur. Ordered that the judgment is affirmed.

exists at the time of the appeal presupposes that the issue was properly preserved for review (*see e.g. People v Jean-Baptiste*, 11 NY3d 539, 542 [2008]; *People v Vasquez*, 88 NY2d 561, 573 [1996]; *People v Florestal*, 53 AD3d 164, 169 [2008], *lv denied* 11 NY3d 788 [2008]; *People v Kramer*, 267 AD2d 328, 330 [1999]), and defendant failed to preserve the issue for our review here.